### WILSON v. TORBERT.

1. In setting aside a judgment by default, any time during the term in which it is rendered, on good cause shewn, and permitting the defendant to plead the statute of limitations, there is no error.
2. One partner, after dissolution of the firm, without express authority, cannot create, or revive a debt against his late partner.

J. S. WILSON brought an action of assumpsit in Mobile Circuit Court, against Torbert, as a copartner of the late mercantile firm of J. A. Torbert & Co. of St. Stephens, Alabama, which was composed of Torbert and one J. N. Simpson. The cause of action was a bill of exchange for $650, dated at New Brunswick, the 1st June, 1820, payable to Wilson, six months after date, drawn by Simpson on J. A. Torbert & Co. and accepted by the firm. From the first bill of exceptions taken by the plaintiff, it appeared that on the eighth day of the special term, held in February, 1828, which was the return term, on motion of the plaintiff's attorney, judgment by default was rendered against the defendant, for want of a plea; no appearance having been then entered by him, nor plea filed. On the next day, the defendant's counsel moved to set aside the default, and asked leave to plead. The plaintiff's attorney produced and read in opposition to the motion, a consent rule which was signed by the counsel for both the parties, among others at the same term, and is in these words: "we agree that the time for filing declarations in the causes in which appearances shall be entered during the first week, be extended to the first day of the next term of this Court." The plaintiff's attorney admitted that his declaration was not filed until a short time on the same day before the judgment was moved for by him, and offered to open the judgment, and permit the defendant to plead any plea, other than the statute of limitations, and even that, if accompanied by an affidavit that the debt had been paid. The Court sustained the motion to set aside the judgment, on the ground that three days not having elapsed after the filing of the declaration before it was taken, it was irregular, and the defendant thereupon pleaded the statute of limitations, on which issue was joined. On the trial at March term, 1829, the plaintiff offered the depositions of John N. Simpson, taken in New Jersey, on the 25th September, 1828, who deposed that he was a partner of the

firm of J. A. Torbert & Co. which had been dissolved; and in substance stated that the bill was drawn by him and accepted by Torbert in the firm name; that the debt was justly due, and had not been paid by him, nor as he believed by Torbert. This evidence was rejected by the Court, on objection made by the defendant's counsel; the plaintiff excepted, and assigns the matter of each bill of exceptions, as error in this Court.

Acre, for plaintiff in error. In this case there was no appearance entered for the defendant during the first week of the term, which was necessary to bring it under the consent rule, and consequently, it being under the complete control of the plaintiff's attorney, the judgment was properly claimed. The reason for setting aside the default was not sufficient, as the plea of the statute of limitations is not a meritorious one.

The second bill of exceptions presents a point it is very important to settle. Until the case of *Bell v. Morrison, et. al.,*[a] there was no doubt upon the question any where [a 1 Peters' R. 351.] but in Kentucky; and it has been there changed by legislative enactment. It is decided in *Wood, et. al. v. Braddick,*[b] that a partnership, though dissolved, acts not on the [b 1 Taunt. 104] past, but only on the future. In *Canterfield v. England,*[c] [c 5 Bur. Rep.] it is said the debt is not destroyed by the statute of limitations, but only the remedy, and a slight acknowledgment was sufficient to take the case out. In one sense, the statute is good, but if abused is vicious, and should not be favored by Courts; only in cases of actual payment should it be urged. It was adopted in England at a very early period, and was borrowed from the prescription of the civil law. In 1817, they decided the same point, that an acknowledgment was sufficient to take the case out.[d] The [d 7 Taunt. 611] policy of the statute is good, but let us not construe it against common sense. The case in Taunton,[e] is in point [e 1 Taunt. 104] upon principle. Either partner can collect debts due the firm; why shall he not pay them? They are partners after dissolution for their benefit; why shall they not be so for their liabilities? The rule should operate both ways, if at all. A case in Virginia is in point,[f] and it is there [f 3 Munf. R. 197.] decided in our favor. In our case, as there, proof of the debt is given, and all other sufficient proof. The statute creates only a presumption of payment, and like all other presumptions, may be rebutted by proof. Suppose indulgence asked, and given from time to time, and no new pro-

JANUARY 1831mise; in such case it is contended the debt is lost; this is morally wrong.

Wilson
v.
Torbert.

Our statute is similar to that of England, and therefore all the English constructions are implied as a part of it. When the legislature adopted it, they adopted the whole of the constructions. The law should be certain, and Courts cannot alter it. They are bound to decide it as it was construed and established, when the legislature passed the act. This Court is bound to decide it as it was understood at the making of this contract; the law cannot be made to operate retrospectively. The Court, in 8 Cranch, regretted decisions had gone so far, but so far as they had gone, they must there remain; it was not *res integra*, and they would never unhinge the law. The case of *Bell v.*

*a* 1 Peters' R. *Morrison,*[a] does not apply here; it went upon a local law 351. of Kentucky; they say but for this, they might still decide upon general principles, but this is an *obiter dictum,* and is no authority. I am convinced the Supreme Court of the United States would decide this case as in England. The decision was right enough, because it was so understood in Kentucky under their statute, and it did justice, because contracts were made in reference to it. But that decision should not be followed here: we adopted our statute of limitations at a late period, when it was understood in a certain way, and if the legislature had intended to alter its operations, they would have done so then. But they intended it should be construed as it was heretofore in England. I believe these views are sound, and must be generally acknowledged: see Gow on Partnership, as to the understanding on this statute in England and the United States. The authority and reasoning of the following cases are also relied on by the plaintiff: 2 Douglass' Reports, 651; 5 Burrow's Reports, 2630; 2 Henry Blackstone's Reports, 340; 2 Pothier on obligations, 109, 125; 6 Johnson's Reports, 269; 8 Cranch's Reports, 79; 2 Pickering's Reports, 583.

GORDON, for defendant in error. Two points are raised by the plaintiff here; the first involving an exercise of legal discretion in the Court below, is not a subject for revision here. The agreement bound only those who signed it, and here at the time of the agreement, there was no counsel for the defendant, consequently he was not bound by it; moreover, the plaintiff was first in fault, for not filing declaration. Suppose defendant had appeared

and claimed a judgment of *non pros*, for want of it? Judg-
ment was claimed before the three days had expired for
the filing, within which the defendant had a right to plead
any plea.    But it is a matter of discretion, and cannot be
revised.

JANUARY 1831

Wilson
v.
Torbert.

The second point is more important, but is easily dis-
posed of.    There is no uniformity of decision in England
or the United States, on the statute of limitations, but
Chancellor Kent says there is a tendency to a certain con-
struction, which will be followed.    Will the plaintiff's
counsel call upon the Court to follow what in England is
admitted to be erroneous?    They say there, they are aban-
doning the old decisions.    The leading case there is *Whit-
comb v. Whiting*, in which the Court said, the admission
of one partner binds the firm, because one partner is agent
of the other; that is the reason.    One partner cannot after
dissolution, make a note that would bind the firm.    In
*Walden, et. al. v. Sherburne, et. al.*,[a] an admission of
one partner, is held not sufficient to bind the firm.    If he
cannot contract a debt directly, can he do it indirectly? it
is not reasonable there should be a difference; in either way
the concern would be rendered liable.    This Court is re-
lieved from the necessity of chalking out a rule, because
both in England and this country, the tendency of all the
Courts goes to vary the old decisions.    The old rule of a bare
acknowledgment of a debt is gone, there must now be a
promise; the distinction between right and remedy does
not hold any longer; in this instance, the right is barred,
as is shewn in *Thompson v. Caldwell.*[b]    There is no dif-
ference between title to property, and a contract, as they
are affected by the statute of limitations; so that case is in
point.    To the same effect is *Shelby v. Guy*,[c] where it
was held the statute bars recovery, because the right is gone
as well as the remedy; though there is a consideration
which will support a promise; but there must be a pro-
mise.    Chancellor Kent,[d] reviews all the statutes, and
comes to the proper conclusion, that an acknowledgment
by one partner is not sufficient, after dissolution, to take a
case out of the statute of limitations.    He expressly says
the case of *Whitcomb v. Whiting*,[e] has been shaken in
England; and in a recent case,[f] it has been overruled; there
it appears, there must be a subsequent promise.

[a] 15 John. R. 409.

[b] 3 Littell 136

[c] 11 Wheat. Rep. 361.

[d] 3 Com. 25.

[e] 2 Doug. R. 652.
[f] 9 Serg. and Lowb. 15.

HALL, on same side.    There are several important suits
now pending on the principle, of how far a partner, by his

own acts, after dissolution, can bind the firm. It is a new question here, requiring investigation; and I shall not therefore rest it entirely on the grounds already taken, though they are tenable and good law; there are others equally sound. We contend that the depositions, the exclusion of which, is the chief assignment of error, must be those of an indifferent witness, or the admissions of a party; if they are those of an interested witness, they should have been excluded. But the plaintiff's counsel contends they were the admissions of a party, which we deny.[a] Admissions by a party of record, and if not of record, by a party really interested, are always good.[b] The depositions here are not by either of such persons; they are the voluntary testimony of an interested witness, who is not a party, and who individually owes the debt, if it has not been paid.

But if it be an admission, it is not such an one as will take the case out of the statute of limitations; it is not that of a valid subsisting debt, and amounting to a new promise.[c] The Courts will not now suffer the statute to be frittered away by false constructions: see the opinion of Justice Story on this statute;[d] it is a wise law. In New York, Pennsylvania, Kentucky, and indeed in most of the States, they say that they will at least go no further than decisions have already gone. They recognise the principle, that there must now be such an acknowledgment as amounts to a new promise.[e] Simpson says he had not paid plaintiff, nor did he believe Torbert had paid him, when perhaps he has never been in this State, and cannot know whether or not he has paid. He has no right to say it has not been paid, and the very fact is evidence of fraud. It should at least appear conclusively, that it is due. But if a proper admission, it was made after dissolution of the firm, when a partner cannot bind any other than himself.[f] This has never been disputed; the subsequent promise is a new one, and is a new contract; if it be only a mere continuation, the point must fail, but all the late cases say it is a new contract. The old consideration is gone; and there only remains the moral obligation, as in cases of bankruptcy, which is a good consideration of the new promise. The first decisions under the English statute, which was passed 21 Jac I. sustain my construction.[g] *Stile v. Finch*,[h] was the first case in which it was said the statute must be pleaded, which has been since followed. It would have been well if the first construction

---

Margin notes:

ANUARY 1831

Wilson.
v.
Torbert.

[a] 7 Com. Dig. 436. 3 Day. 309.

[b] 2 Stark. Ev. 39, 41.

[c] 2 Poth. on Ob. 109. 15 John. Ch. R. 266, 290. 15 John. R. 425

[d] 1 Peters' R. 351.

[e] 8 Cranch R. 72.

[f] 3 Kent 25. 1 Ld. Ray. 389, 421. 5 Bin. 573.

[g] Cro. Car. 115. Ibid 163

[h] Cro. Car. 381.

had been followed. Croke was right in his opinion, and many evils have flown from not observing it. The reason of the subsequent decisions was, the exceptions in the statute, but in this case there are none relied on, so it is not within the reason of the latter constructions. They compel us to plead the statute, to give them the benefit of the exceptions, when they are afterwards discovered not to be within any of them. If the Court could know this beforehand, the declaration would have been demurrable, and within the reason of the old decisions.

The writ is dated in February, and the depositions were taken in September, of the same year; they therefore are not available as a promise. The case in Douglass, is the foundation of all wrong decisions on this point; no other reason is given in the after cases, but that Lord Mansfield had said it. In *Bell v. Morrison, et. al.*[a] Justice Story has much the best of the argument within him.

Acre, in conclusion. As to the depositions, language cannot be stronger; they are sufficient to put Torbert on his proof of payment. The draft was produced, and that was evidence of non-payment. It is said the promise to take the case out of the statute must be express. The original debt is the consideration; and the only question is, has it been paid; if it has not, the law implies a promise as binding as one express. The case in Cranch sustains us; and does not take the question out of the general rule. Courts have said they would go no further than decisions have already gone; but they have also said they are bound to go that far; *stare decisis*, is their language. We must look how the decisions stood when the statute was adopted by the legislature; this is the strongest evidence of their intent. The law is founded on moral duty and right; and will not encourage dishonesty. There is no authority requiring an express promise; it is no where so decided. The case of *Jackson v. Fairbank*,[b] repels the position taken by the defendant in error; it is there held that part payment is a sufficient acknowledgment of the debt. In 7 Taunton,[c] it is said if there is a clear acknowledgment at any time, that the debt existed, it should be enforced. What was intended by the statute, for if construed as contended, it works abominable injustice; the consequences will be odious; it will reduce some to beggary, while it will exhalt others as unjustly as if by robbery. The intention certainly was to protect those who had lost evidence of payment.

*Margin notes:*

JANUARY 1831

Wilson
v.
Torbert.

a 1 Peters' R: 351.

b 2 H. Black: 340.

c Page 608.

JANUARY 1831    Partners are in law but one, bound *in solido;* payment
by one is payment by both; contract by one is for the ben-
Wilson    efit of both.    The argument of defendant's counsel goes
v.
Torbert.    on the presumption, that dissolution dissolves the obliga-
tion of solidarity; but that cannot affect their relation to
*a* 2 Pickering others.*a*    There are but two decisions against this position,
583.
the one in Kentucky, the other in Pennsylvania; the latter
of which is not good authority of late.    But in the absence
of all authority, reason is strongly on our side.    They
should be considered solidary throughout.

By JUDGE SAFFOLD.    From the first bill of ex-
ceptions, this case appears not to have been embraced by
the consent rule, in as much as no appearance was entered
for the defendant, during the first week, consequently the
declaration under the statute was due on the third day of
the term.    It was not filed until the eighth; the statute
allows defendants three days to file their pleas, after the
expiration of the time given for filing declarations.    Here
the motion was made to open the judgment by default,
and for leave to plead on the next day, after the declara-
tion had in fact been filed.    In the further disposition of
this exception, it is sufficient to observe that the statute
contemplates an allowance of three days for filing pleas,
after the declarations have been received.    By means of
the plaintiff's default, the defendant was denied an oppor-
tunity to plead, until one day anterior to that on which he
moved to plead.    The statute vests a discretion in the
Court to extend the time for pleading, according to cir-
cumstances.    It was also a power incident to the Court, on
common law principles, to set aside judgments by default,
at any time during the term, on reasonable cause shewn.
To regard such judgment, and a variety of orders, which
must necessarily be rendered *ex parte,* or on imperfect
knowledge of the facts, conclusive on the Courts, would
be a dangerous and inconvenient abridgment of their
powers; hence we think there was no error in setting aside
the judgment by default, and permitting the defendant to
plead.

The second bill of exceptions presents the highly in-
teresting questions, 1st.    Whether the acknowledgment of
a debt by one partner, after the dissolution of the firm, is
sufficient to take the case out of the statute of limitations,
as to the other partners.    2d.    Whether the admission or
promise, in the manner and to the extent made, amounts

to a sufficient acknowledgment of a present subsisting
debt. The latter, as well as the former, being a grave and
highly vexed question, and being found, from the result
of our deliberations, unimportant in the determination of
this case, no opinion is expressed upon it. Our opinion
respecting the responsibility of one partner for the ac-
knowledgment of debts by another, after a dissolution,
will dispose of this case. It is a subject on which there
has been great diversity of opinion, both in England and
the United States; and a full review of them, would ex-
tend this opinion far beyond a proper length. It is there-
fore deemed sufficient to refer only to such cases, as are
believed to furnish ample authority to this Court, to decide
the question according to our conceptions of justice, and
the soundest principles of policy.

It is true as contended in argument, that the case of
*Whitcomb v. Whiting,*[a] which held that an acknowledg-
ment of a debt, by one of many joint and several promis-
sors, took the case out of the statute as against the others,
has generally been treated as a leading case in England,
and has greatly influenced the decisions in this country,
in similar and analogous cases. But it is equally true, that
in both countries, many tribunals of the first eminence,
have expressed strong disapprobation of the rigor of the
rule; and that several, especially in this country, have
overruled the doctrine as unsound. It must be admitted,
that in the State of New York, the principle is still main-
tained, that the confession of one partner, without any
express authority to settle the business of the concern,
made after the dissolution, will take the case out of the
statute. But in that State, it is held that the acknowledg-
ment will not of itself, be evidence of an original debt,
because that would enable one partner to bind the other in
new contracts; yet the original debt being proved or ad-
mitted, the confession of one will bind the other, so as to
prevent him from availing himself of the statute, *Smith
v. D. & G. Ludlow.*[b]

A similar doctrine seems to have prevailed in the Su-
preme Court of Massachusetts, *Hunt v. Bridgham,*[c] and
also in Virginia, *Shelton v. Coke.*[d] The Supreme Court
of Pennsylvania has established for its government, the
contrary doctrine, that the acknowledgment by one part-
ner, after the dissolution of the partnership, will not take
the case out of the statute, as to the other partners. The
same rule of decision has uniformly prevailed in the Su-

*(margin notes)*
JANUARY 1831
Wilson
v.
Torbert.

a 2 Doug. R. 652.

b 6 John. R. 267.

c 2 Pick. R. 681.
d 3 Munf. R. 191.

JANUARY 1831 preme Court of Kentucky, as is shewn in the very elaborate opinion of the Supreme Court of the United States, delivered by Justice Story, in the case of *Bell v. Morrison, et al.*[a]

Wilson
v.
Torbert.

In this decision of the Supreme Court of the Union, not only are all the most respectable authorities on this subject reviewed with deliberation, but the reason and analogy of the principle are fully investigated. That case it is true, as contended, originated in the district of Kentucky, and the decision was made with reference to the rules of decision in that State. The Court remarked, that it was their duty, in a case arising in Kentucky, to pursue the spirit of the decisions there, so far as the principles on which they were made could be gathered. They also admitted that "the English cases decided since the American Revolution, are by an express statute of Kentucky, declared not to be of authority in their Courts; and consequently *Whitcomb v. Whiting*, in Douglass, and the cases which have followed it, leave the question in Kentucky quite open to be decided upon principle."

*a* 1 Peters' R. 351.

It is not recollected that this question has ever before been fully presented to this Court, or decided by it. The provision of the English statute of limitations, of that of Kentucky, and of our own, are understood to be the same, so far as they relate to the question under consideration; consequently the decision of this question, abstractly considered, ought to be the same under either. As no previous adjudication of our own has established a local precedent, that duty remains to be performed. Principles which have been satisfactorily settled by a uniformity of English decisions, in relation to subjects of which the law and reason are the same with us, are ordinarily recognised as rules for the government of this Court; more especially if the same rules have been generally adopted by the American tribunals; yet the authority of the Court to construe our own statutes, according to our convictions of justice and right, cannot be denied. If the Courts of England, or of any State, have adopted principles of decision, which long experience and improved reflection have condemned, and with which the same Courts have become dissatisfied, such cannot be received as safe precedents for us. In the case of *Bell v. Morrison et. al.*, already cited, Justice Story, referring to the doctrine of *Whitcomb v. Whiting*, remarks that it has not been received even in England, without hesitation, and reviews some of the English cases thus:

"In *Clark v. Bradshaw,*[a] Lord Kenyon, at *nisi prius,* expressed some doubts of it; and the cause went off on the other ground. And in *Brandram v. Wharton,*[b] the case was very much shaken, if not overturned. Lord Ellenborough, upon that occasion, used language, from which his dissatisfaction with the whole doctrine may be clearly inferred. 'This doctrine,' said he, 'of rebutting the statute of limitations by an acknowledgment, other than that of the party himself, was begun with the case of *Whitcomb v. Whiting.* By that decision, where however there was an express acknowledgment, by an actual payment of a part of the debt by one of the parties, I am bound. But that case was full of hardship; for this inconvenience may follow from it: suppose a person liable, with thirty or forty others, to a debt; he may have actually paid it; he may have had in his possession the document, by which that payment was proved, but may have lost his receipt; then though this was one of the very cases which the statute was passed to protect, he may still be bound, and his liability renewed by a random acknowledgment, made by some one of the thirty or forty others, who may be careless of what mischief he is doing, and who may not know of the payment which has been made.'" Though the Supreme Court in the case referred to, admit that their opinion was influenced in some degree by the principles of the Kentucky decisions; yet they use language from which their opinion, in the abstract, cannot be mistaken. The opinion remarks, that "by the general law of partnership, the act of each partner, during the continuance of the partnership, and within the scope of its object, binds all the others. It is considered the act of each and of all, resulting from a general and mutual delegation of authority. Each partner may therefore bind the partnership by his contracts in the partnership business; but he cannot bind it, by any contract beyond those limits. A dissolution however puts an end to the authority. By the force of its terms, it operates as a revocation of all power to create new contracts; and the right of partners, as such, can extend no further than to settle the partnership concerns already existing, and to distribute the remaining funds. Even this right may be qualified and restrained, by the express delegation of the whole authority to one of the partners." In the further examination of the subject, the same opinion fully declares the doctrine, that an acknowledgment or promise, to take a case out of the sta-

Wilson
v.
Torbert.

[a] 3 Esp. R. 155.
[b] 1 Barn. & Ald. 463.

39

JANUARY 1831 tute, is both upon principle and authority, to be deemed, not a mere continuation of the original promise, but "a new contract, springing out of, and supported by the original consideration;" and that "after a dissolution, no one partner can create a new contract, binding upon the others; that his acknowledgment is inoperative, and void as to them." It has not escaped notice, that in the opinion thus quoted, the Court was not unanimous, but it was the opinion of the majority of the highest tribunal; other questions no less difficult and important, were also involved in the case, and it does not appear from which, or whether from any of the principles quoted, there was any dissent.

Wilson
v.
Torbert.

a 8 Cranch 72. In the case of *Clementson v. Williams*,[a] the same questions were brought before the same Court, viz: what was a sufficient acknowledgment, to take a case out of the statute, and whether an acknowledgment by one partner, would revive the debt, as against the other. The case went off on the ground, that the acknowledgment was insufficient to revive the debt against the other; and the latter was left by the Court as a question undetermined. In the decision, however, Chief Justice Marshal remarked, that "so far as decisions have gone on this point, principles may be considered as settled, and the Court will not lightly unsettle them. But they have gone full as far as they ought to be carried, and this Court is not inclined to extend them. The statute of limitations is entitled to the same respect with other statutes, and ought not to be explained away." This was as early as 1814.

b 3 Com. 26. Chancellor Kent,[b] maintains the doctrine which appears to have been preferred by the Supreme Court of the United States. He says, "of late, the decision in *Whitcomb v. Whiting*, has been very much questioned in England, and it seems now to be considered as an unsound authority, by the Court which originally pronounced it. And we have the best authority in this country for the conclusion, that the acknowledgment of a debt by a partner, after the dissolution of the partnership, will be of no avail, and will not take the debt out of the statute, as to the other partner, on the ground that the power to create a new right against the partnership, does not exist in any partner, after the dissolution of it; and the acknowledgment of a debt, barred by the statute of limitations, is not a mere continuation of the original promise, but a new contract springing out of, and supported by the original consideration. This is the doctrine, not only in Pennsylvania, but in the Supreme

Court of the United States: and the law in England and in this country, seems equally to be tending to this conclusion." This review of the authorities, is deemed sufficient to dispose of the case, and I think leads irresistably to the conclusion, that one partner, after the dissolution, without express authority, cannot create or revive a debt against his late partners, and in this opinion, the Court are unanimous. Therefore the judgment is affirmed.

JANUARY 1831

Wilson
v.
Torbert.

Judgment affirmed.

JUDGE CRENSHAW, not sitting.

3s 307
107 91