DEMOTT, survivor, *vs* SWAIM's adm'r.

1. The acknowledgment, by one partner, in the name of a firm, of the service of process—*after a dissolution of the co-partner-ship*—will not authorise a joint-judgment against the (late) partners, generally.

Error to the Circuit Court of Mobile.

The action in this case was assumpsit; and was prosecuted in the Court below by Stephen Swaim, indorsee, against Ryder & Demott, as makers of a promissory note.

The writ commanded the sheriff to "take the bodies of Richard Ryder and Michael Demott, who were lately co-partners, doing business, under the name and style of Ryder & Demott," &c.: and an indorsement on the back thereof, was in the following words, to wit—"We acknowledge service of this writ—ninth day of April, 1830.

　　　　　　　　　"Ryder & Demott, by

　　　　　　　　　　　　"R. G. Ryder."

The plaintiff declared, in the usual terms against the defendants, as co-partners; and a judgment by default was rendered in his favor.

On a writ of error to this Court, the defendants said, that in the giving of judgment in said cause, there was manifest error, in this, to wit—

That the said suit and action of the said Stephen Swaim, against the said Ryder and the said Demott, in the Court below, was brought against them, as late partners in trade and business ; and that the writ in the said cause, was not served on the said

Demott, against whom, together with the said Ryder, the said judgment of the said Swaim was rendered in the Court below. Also, in this, that judgment was rendered in the Court below, against both of the said plaintiffs in error, in favor of the said defendant in error, when the writ in the said suit was neither served on the said Demott; or the service thereof acknowledged by him, or by any other person authorised by him so to do. Also, in this, that no process was served an the said Demott, in the said cause, in which judgment was rendered against him and the said Ryder, in the Court below, in favor of the said defendant in error, although the writ was issued against the said Ryder and the said Demott, as late partners in trade, in which character they are charged in the declaration of the said defendant in error.

*Elliott* and *Crawford*, for plaintiff in error.
*Sallee*, contra.

LIPSCOMB, C. J.—This was an action of assumpsit, brought by Swaim, against Michael Demott and Richard G. Ryder, after the dissolution of the firm, purporting to be on a promissory note, given by Ryder & Demott. The service of the writ was acknowledged by Ryder, in the following words: "We acknowledge service of this writ, ninth day of April, 1830.                    "Ryder & Demott, by

                         "R. G. Ryder."

Judgment was rendered by default, against both defendants.

DEMOTT, survivor, *vs* SWAIM's adm'r.

The error now assigned, is the rendering this joint judgment, when Ryder, alone, had been legally served with process. After the cause was brought up here, Ryder, one of the plaintiffs in the writ of error, and Swaim, the defendant in error, both died, and the suit was revived, in the name of Demott, the surviving plaintiff, and Prescott, the legal representative of Swaim.

The only question presented, is as to the authority of one partner to enter an appearance, or to acknowledge service of a writ, for his former partner, after the dissolution of the firm, when the writ is sued out on a partnership liability.

If Ryder had no authority in law, to acknowledge service for his former partner, Demott, the service, so far as it relates to Demott, is void, and the joint judgment is erroneous. The doctrine, that one partner may, by his own act, bind his co-partners, grows out of the close community of interest subsisting between the members of the firm, and the necessity of reciprocal confidence in each, to the successful prosecution of their business.

In matters irrelevant and distinct from the business of the firm, one partner can not bind his co-partners, even during the existence of the firm, unless the other co-partners give him authority so to bind them. One co-parrner can not bind the firm, by a promissory note for the payment of his own individual debt, although he may subscribe the name of the firm to such note; because it would be a fraud on his co-partners. But, in all matters connected with the prosecution of the business of the firm, the act of one is the act of all, and will create a joint liability. It is, sometimes, however, difficult

to determine, whether the transaction is strictly within the line of the co-partnership business.

[a] 3 Dallas, 331.

In *Hills et al.* vs *Ross*,[a] the doctrine seems to have been conceded, without controversy, that one partner could not accept service of a writ for the other partners. In that case, a libel was filed, by the British Consul, in behalf of Walter Ross, against Hills, May and Woodbridge, (who formed a partnership, in Charleston, under that firm,) and John Miller.

The plea was headed—" The plea of Ebenezer Hills, one of the company of Hills, May & Woodbridge, in behalf of himself, and his said co-partners, who are made defendants in the libel of Walter Ross ;" and concluded with praying, " on the behalf aforesaid, to be dismissed, as far as respects the said Hills, may & Woodbridge."

The replication regarded the plea of Hills, as the plea of all the company, and the rejoinder was signed by Joseph Clay, jr., proctor for the defendants.— The decree was against all of the defendants, and the writ of error was in the name of all. But there was evidence on the record, that May had been absent in Europe, during the whole of the proceedings, and there was no evidence of a warrant of attorney, or other authority to appear for him.

On the objection being made by *Ingersol*, for the plaintiffs in error, that partners had no authority to appear for each other, in suits.—

*Tilghman*, for the defendant in error, relied on the rejoinder, where the proctor states himself to be employed by all the defendants, and insisted that his authority could not be denied or examined, in this stage, nor in this form of the objection.

*Iredell*, Justice, doubted, whether one co-partner

could authorise a proctor to appear for all the company. *Chase, Justice,* said the Court could not affirm the decree against persons who were not before the Court that pronounced the decree; and the record must show, that they actually did appear—a bare implication, the titling of a plea, or a general statement, that one of the partners acts for all, is not sufficient. For, though partners, in the course of trade, may bind each other, they can not compel each other to appear to suits, nor undertake to represent each other in Courts of law. What, however, is the legal effect of an appearance by a proctor, an officer of this Court, is another ground that merits consideration."

I have quoted this law, at large, because, as far as that Court can be authority, the question is settled, as to the right of one partner to appear for another, at common law. It shows, that it was not competent for him to do so; and the reason is, I apprehend, because it is not in the course of business. The case was one of a subsisting co-partnership, and it would lose none of its weight, when applied to the the members of a dissolved firm.

Gow, (page 337,) in treating on the law of co-partnerships, says, "After the dissolution of a partnership, to which the necessary publicity has been given, the parties become so disunited in interest, that one can not by any contract or engagement, implicate the credit of the others."

The doctrine of this Court, in the case of *Wilson vs Torbert,*[a] is, that one partner can not, by a subsequent promise, after the dissolution of the firm, revive a debt, barred by the statute of limitations, against the firm.

[a] 3 Stewart, 296.

5 s & p.        38

This decision is, no doubt, founded in the soundest principles of law, and has the sanction of a most distinguished jurist; but, it is not to be denied, that it is contrary to what was formerly held to be the law, and reference is now made to it, for the purpose of shewing, that so far from enlarging the powers of partners, after a dissolution, modern authority has greatly curtailed it.

This view will be sufficient to show what ought to be our decision, in the case before us, if the act of February, one thousand eight hundred and eighteen, does not operate on it.    This act has two sections on the subject of suits against co-partners.  The fifty-seventh section, as numbered in Aikin's Digest, (page 268,) provides, "where any cause of action may exist against two or more partners, of any denomination whatever, it shall be lawful to prosecute an action against one or more of them: and, when a writ shall be issued against all the partners of any firm, service of the same, against any one of them, shall be deemed equivalent to service on all; and the plaintiff may file his declaration, and proceed to judgment, as if the said writ had been served on each defendant."

The fifty-eighth section provides, " that when any suit shall be instituted against two or more persons, as partners in any firm, if one or more persons, not partners, in such firm, shall have been such as such, the Court, before whom such suit is pending, shall discontinue said suit against such person or persons as shall appear not to be partners in said firm, and proceed to judgment and execution

against all or any of the defendants, in such action, who shall appear to be partners."

If this act applies to a dissolved firm, I should incline to the opinion, that the error relied on, could not be sustained; because, in that aspect, it would not be material, whether Demott had been served with process or not. It would be sufficient, if Ryder had been served; and accepting service, would seem to be equivalent to service executed by the proper officer; yet, it is not altogether clear, that the voluntary acceptance of service, would be sufficient under the statute—and there would be much plausibility in requiring the words of the statute to be strictly complied with.

If the process were required to be placed in the hands of a public officer, for execution, in the ordinary discharge of his duty, the publicity of the act would be greater, and the means of practicing a fraud on the rest of the co-partners lessened. I am not certain, therefore, if we do not concede too much, when we say, that service acknowledged by one of a firm on the back of a writ, that is, never, perhaps, submitted to the light of day, until the return term, when it is filed in Court by the plaintiff, is good.

I have introduced two sections of the act of one thousand eight hundred and eighteen, on the subject of suits against co-partners, for the purpose of enquiring how far we may go, consistently with the ordinary rules of construction, in subjecting a case of the description of the one under our consideration, to its influence; and I will here lay down a very uni-universal rule of construction. If there is an ambiguity in the statute, we should resort to the intention

of the law-making power, and ascertain the object in view, in its enactment, and so construe it as to repress the evil complained of, and advance the remedy. The intention of the actor is the key to all acts of doubtful import—therefore, the application of the rule to acts of the legislature, is not peculiar, when there is no room to doubt the object in view, either from the decisive character of the thing done, or from the language employed. We should indulge in no conjectures that something more was intended, lest our speculations might be idle, and lead to erroneous results.

If one evil has been removed by the direct and obvious terms of the act of the legislature, we have no right to suppose, that it was intended to be so extended as to remove another, merely because that other is equally onerous. This would be assuming to judge what the laws ought to be; and in fact, officiously aiding in legislation, a power expressly withheld from us, by the constitution.

There are two objects explicitly enough expressed in the first section of the act referred to. The first was to enable a plaintiff to sue a less number than all the members of a firm; the second, if all the members of the firm were included in the writ, that service on one of them, should be sufficient to sustain a declaration and judgment against all. These provisions were, no doubt, remedial in their character; but they are, never the less, an innovation on the long and well established principles of the common law.

At common law, all the partners of a firm were required to be made parties in a suit; if one was

omitted, the writ would be abated on plea. This presented a difficulty often very embarrassing, and productive of cost and delay, from the want of information, on the part of the plaintiff, as to who composed the firm. Again, if all the members named in the writ, could not be found, the tedious process of outlawry had to be resorted to, before you could proceed; as at common law, you could not proceed against those who had been served with process, and discontinue as to the others—the discontinuance as to one, would operate as a discontinuance of the action. These difficulties are removed by the act of one thousand eight hundred and eighteen.

But, are we authorised to extend the act so far as to embrace within its meaning, not only existing firms; but, also, the members of dissolved firms?—It is true, that, for the purpose of closing the concerns of the firm, it is supposed to have a legal existence after its dissolution, and the joint-obligation and liabilities of the co-partners continue.

If the terms of the act would, by implication, only admit of such a construction, I should hesitate much to believe that such was the intention of the legislature; and, if such intention was clearly expressed, I think that its constitutionality, might be doubted. In principle, there seems to me, to be a marked difference in the application of the act to an existing firm; and to the members of it, collectively, after the dissolution. Whilst the firm continues, there is, *ex necessitate*, a mutual confidence subsisting between its members, arising from a community of interest; and, in many instances, any one member, if so disposed, has it completely in his power to sa-

crifice the interest of the concern. A service of process on one member, under such circumstances, to affect the whole, is not conferring on such member, greater power over the firm, than he possessed before, from his relation to it. True it is, that he may, to effect some selfish or fraudulent object, withhold from his co-partners, notice of the suit, and permit judgment to be rendered, without a defence, and thereby sacrifice their interest.

But this he could have done as effectually, and as disastrously, in a variety of ways, before, and without the operation of the statute. The evil would be one of a class resulting from a misplaced confidence in a dishonest partner. After a dissolution of the firm, this confidence is not to be presumed, either in fact, or by implication; for, in truth, a loss of mutual confidence is not unfrequently the cause of the dissolution of the firm; and, after the dissolution, one can not bind the others, by his promise or undertaking, and would have no power to commit a fraud on the other members of the firm, unless the statute enables him to do so.

If the partnership property only were liable, and the judgment operated as in cases of attachment *in rem*, there would not be so strong an objection to the rendition of the judgment against all who were jointly liable, although one only had been served with process. This salutary rule of the civil law, has never been adopted in this country: the judgment would not only affect the co-partnership property, but also the private property and future acquisitions of each member of the firm.

It may well be questioned, if, in giving the com-

mon law effect of a judgment against partners, against one who has never been served with notice, and consequently had no opportunity to be heard in his defence, we would not be violating one of our proudest and most cherished rights—the right of a trial by jury.

So far as the judgment operated on the partnership property, as before intimated, the consequences, if not the principle, would be essentially different.— Because, one equally interested in that property had been served with process; and, by implication, it would not appear unreasonable, that all who were jointly interested should be affected with the notice, so far as that joint-interest was involved.

In the case of *Wilson & Hallett* vs *Stratton & Winthrop*, (a suit in the State of New York,) the constitutionality of the act of one thousand eight hundred and eighteen, so far as it affected those who had not been served with notice, was subjected to a judicial investigation.

I have seen no report of the case in print; but, from a manuscript of the decision of the Court, I understand it was ruled, that the statute was unconstitutional and void, so far as it subjected partners, who had not been served with process—because it, in effect, was a denial of the privilege of a trial by jury.

It perhaps may not be exactly in conformity to established usage, and may not be very flattering to one's self-love, to invoke the authority of a Court of another State, against the constitutionality of an act of our legislature. Yet, it is the part of prudence, not to reject, but cheerfully and freely

to receive lessons of wisdom from whatever source they may emanate.

I am constrained to say, that if the decision in the case just referred to, in New York, is not well founded, according to the principles of our constitution, and in conformity to the genius of our government, I have not been able to detect its fallacy. We, however, are not driven to the strait of declaring an act of the legislature void, in the case under our consideration.

Whether the act of one thousand eight hundred and eighteen, be constitutional or not, is not material in this case, because it does not come within its provisions. This suit was brought after the dissolution of the firm of Ryder and Demott.

We subject the act of one thousand eight hundred and eighteen, to rigid and narrow rule of construction, when we confine its operation to existing firms. The two sections of the act quoted above, the last for the purpose of aiding in the construction of the first, both use terms strictly applicable to an existing firm. The words "partners," and "firm," are uniformly, used in both sections, in connection with the present tense. The whole of the last section shows that existing firms were to be acted on.

I am aware that a different construction was given to the act of one thousand eight hundred and eighteen, in the case of *Morgan & Click* vs *Click*,[a] [Minor's R 79.] decided at a very early period of our judicial history. And I apprehend, the act had not, at that time, received much reflection from any one. At least, I am free to confess, that for one, I had not bestowed as much thought on it, as was necessary to enable me

to give it a correct construction. My subsequent reflections have long since satisfied me, that the decision of *Morgan & Click* vs *Click* ought to be overruled. The opinion of the Court is short, and it states that it is not material to say, whether the act would apply, if the copartnership was dissolved, because it did not appear, in that case, to have been dissolved, at the time of declaring; but, expresses an opinion, that the statute would embrace the members of a dissolved firm, for the reason, that as the dissolution of the firm was always within the control of the members, they would not be permitted, by so doing, to evade the effect of the statute.

With due respect, I may be permitted now, (for I then concurred,) to say that it does not appear to me, that any deprivation of right would result from such an evasion, even if the dissolution of the firm had such object in view; nor can I perceive how that consideration should govern the construction of the law. So long as partners had confidence in each other's integrity, they would fear nothing from the operation of the statute—they would not believe any member capable of so much depravity, as to practise a fraud on the rest, under the color of a suit, brought against him.

If mutual confidence were destroyed a dissolution would certainly follow, if no suit was expected. A fear that a suit might be brought, and service on one of the partners alone concocted in fraud, and defended in bad faith, without the knowledge of those most materially to be affected thereby, would be only an additional, and a more urgent motive for the disso-

5 s. & p.            39

lution. If a door to such fraud could be closed, by a dissolution, it would surely not be a reprehensible act, so to close, and evade the writ.

The oppressive consequences, that obviously may result, under the law, even when it is confined in its operation, to the plain and obvious import of the language in which it is couched, would admonish us against an enlargement of its influence, by a liberality of construction, that would be an infringement of the soundest and most salutary principles of the common law, if not an infraction of a right guaranteed by the constitution.

A majority are, therefore, of the opinion that the judgment must be reversed.

THORNTON, J.—In this case I concur in the result of a reversal of the judgment; but do not think that any consideration of the act of the legislature, respecting service of process on partners, is necessarily involved, and, therefore, I do not commit myself upon it.

There is nothing on the record, to show a legal service of the writ in this cause, upon either of the partners; or any thing equivalent to such service.— There is an indorsement on the writ, purporting to be an acknowledgment of service by one of the partners, for himself and his co-partner; but no competent proof of its execution by the party signing it, which I think was indispensable to authorise the judgment, under any view of the statute.

SAFFOLD, J.—Entertaining a different opinion

from that of the majority of the Court, I will briefly state my contrary views.

The opinion of the Court admits, as it necessarily must, that the statute of one thousand eight hundred and eighteen, by its terms, embraces *existing partnerships*, and declares, that in suits against partners, "service of the writ on any one of them shall be deemed equivalent to service on all." But, it is said, this provision does not apply after a dissolution of the firm; and it is also intimated, that the act is unconstitutional—that it denies to the party on whom there has not been *personal* service, *the right of trial by jury*.

If there be any *constitutional* objection to the statute, I think it would more properly arise under the twenty-ninth section of our *declaration of rights*, which provides, that "no person shall be debarred from prosecuting or *defending* any civil cause, for or against him or herself, before any tribunal in this State, by him or herself, or counsel."

Unless it be considered that one of the original defendants had no notice, and consequently no opportunity to defend the suit in any way, there can be no pretence for saying he was denied a trial *by jury*. The statute prescribes nothing, respecting the *mode* or *manner* of trial; but contemplates, as in all other civil suits, that one or more of the partners, as they may choose, will appear, either in person or by their counsel, and urge any defence the case will admit of, in any legal and constitutional mode.

The rational and legal presumption is, that service of process on any one of the partners, will afford *notice* of the suit to *all*, and is, therefore considered

*constructive service.* The constitution contains no prohibition against constructive, more than personal service of process.

The policy or expediency of the regulation presents a question entirely different, and one which belongs exclusively to a different department of our government.

While I unhesitatingly admit the power and duty of the judiciary, to declare acts of the legisluture *unconstitutional and void,* which are found to be *clearly so,* (*Marbury* vs *Madison,*[a]) I do maintain, that it is equally necessary, to be cautious and circumspect, in such adjudications. It should seldom or never so decide, in a doubtful case.—*Fletcher* vs *Peck.*[b]

That lust of power which is but too common to each of the departments of the government, often prompts either, to encroachments on the rights of the others.

On principle, it would appear that no objection can be maintained against the competency of the legislature to authorise notice of a suit, by service of process on a partner, for a partnership liability, which would not deny the right to perfect the service, by attaching a defendant's property, or debts, in the hands of another, or by publication in his absence. This latter power is known to be in common use, not only in the States of Europe, but in most of the States of this Union, where constitutions exist, similar to our own.

If, when judgments have been obtained, it should happen, in a rare case, that a defendant has not, from this mode of service, or from the *lis pendens,* received actual notice, especially if the failure has

been a consequence of fraud practiced upon him, and injustice has been done, the Chancery is open for his redress, even in this State. If suit be instituted on such judgment, in another State, against a citizen thereof, who has been charged as a partner here, or otherwise, the Courts there are equally competent to afford him redress.

Should they decide that *their* citizen, who had not actual notice of the process, is not affected by the judgment, because not amenable to, or within *the jurisdiction of our Courts*—that such judgment should be considered as only *prima facie* evidence of the debt, or even a nullity beyond the limits of this State—as New York has done in other cases, as well as in *Wilson & Hallett* vs *Statton and Wendthrope*, from this State—our deliberations should not be influenced by this consideration. This Court has, on various occasions, maintained a different principle from that which has generally prevailed in the Courts of New York, respecting the " faith and credit," and "force and effect," of judgments of sister States.

But if the decision in New York, in the case mentioned, was as suggested, and if its authority be admitted, it would by no means, follow, that a similar decision, against the validity of the statute, would be correct in this State, among the constituents of the same general assembly who passed it, and within the acknowledged jurisdiction of the Court.

On these grounds, and in the absence of any shewing, that both the original defendants had not actual notice of the process, or that injustice has been done, the judgment may be valid, requiring an affirmance

in error; when, in a different State, or under a different aspect of the case, it ought to be set aside, by a resort to the proper means of redress.

It is also to be recollected, that this statute is understood to have been in force, at the time this liability was contracted: that its constitutionality had been sustained, by a judicial decision of our highest tribunal, in *Click & Morgan* vs. *Click*, and that it consequently formed a part of this contract.

As to the effect of the dissolution of the firm, even if, in this case the fact sufficiently appear, (but on which I express no opinion,) it would be sufficient to refer to a principle believed to be universally established. In the language of Gow, (312,) it is that "from the nature of the partnership, engagements may be contracted, which can not be fulfilled during its existence, *exposed as it is, to sudden and arbitrary terminations; and the consequence thereof must be, that for the purpose of making good out-standing engage- ments, the partnership must, in legal contemplation, have a continuance, although as between the parties themselves, it is actually dissolved.*"

[a]3Com.137    In the language of *Kent*,[a] it is that "*Until the purpose of finishing the prior concerns be accomplished, the partnership*, as we have already seen, *may be said to continue*, and if the object be in danger of being defeated, by the unjustifiable acts or conduct of any one of the partners, a Court of Equity will interfere, and appoint a manager or receiver, to conduct and settle the business."

From these principles, the rule results, that by a dissolution of a partnership, after it has been volun-
[b]3 ib. 34    tarily entered into, "for better and worse;"[b] which

DEMOTT, survivor, *vs* SWAIM's adm'r.

may be caused by the *sudden, arbitary*, and often the *fraudulent act of the partners*, neither *rights* nor *remedies*, previously existing, and which would otherwise continue, can be defeated, as was held by the previous decision of this Court, already referred to.

I can not admit the slightest analogy between the principle involved in this case, and that relative to the revival of a debt barred by the statute of limitations. The latter affects the *right*, not the *remedy;* it requires a new promise or undertaking, constituting a new *contract*, though on the original consideration, before it can bind; and this, according to the modern doctrine, one partner, after a dissolution, can not make, so as to bind any but himself. To this principle I fully assent, because it affects the *right in question*, but deny its application to the case under consideration, where the remedy only is involved—a matter always within the control of the legislature, and which has been accordingly regulated, so as to make service of process on one partner, *"equivalent to service on all."*

My voice would be for an affirmance.