JONATHAN DOUGHTY

*v.*

AMANDA M. DOUGHTY.

</div>

The evidence of a husband in a divorce suit is not competent to prove his wife's adultery, nor to prove her handwriting on an intercepted letter to her alleged paramour; nor are statements of such paramour, made in defendant's absence, competent.

Bill for divorce. On final hearing on pleadings and proofs.

*Mr. S. H. Grey*, for complainant.

*Mr. D. J. Pancoast*, for defendant.

THE CHANCELLOR.

The bill is for a divorce *a vinculo*. It charges adultery, committed on different days in October and November, 1877, and at divers other times with certain persons in Philadelphia; and in this state with divers persons whose names are unknown to the complainant; and particularly on the 9th of February, 1878, at Atlantic City, with Henry Furman.

The defendant answered the bill. The answer denies the charges, and alleges that in March, 1878, the complain-

ant deserted the defendant and his children, and left them without support. It also charges the complainant with adultery. The defendant has offered no proof, but she insists that the proof presented by the complainant is not sufficient to entitle him to a divorce.

The parties were married in Philadelphia, in 1861. They lived in Atlantic City in 1877 and 1878, and the complainant has resided there ever since. He kept a hotel there. Henry Furman was bar-keeper for him in it in the summer of 1877. In the spring of 1878, Furman, who was not then employed by the complainant, but was living elsewhere, paid a visit to the hotel during the temporary absence of the complainant from home. The latter appears to have returned unexpectedly while he was there, and a scene of violence occurred, in which Furman was, early in the morning, driven by the complainant from the complainant's house (where he had passed the night), clothed in his night-dress, and sought protection and shelter in the town, stating in the hotel and in the town, that the complainant had caught him in bed with his wife. At the same time the defendant was beaten by the complainant, because, according to her statement, he found her in the room of a man who was in bed, where she said she had gone to put out a light which she saw burning there. She said that the man left his clothes. Charles H. Senn, one of the complainant's witnesses (he was his bar-keeper at the time), swears that he slept in a room on the same hall on which the room in which Furman slept was, and that, as he came down in the morning, he passed the room of the latter, and saw a light burning in it. This was before the fracas occurred.

From the testimony of Caroline Leeds, one of the defendant's intimate friends, who was called by the complainant, but who appears to have been a somewhat unwilling witness, there seems to be no reason to doubt that the transaction to which the defendant referred was that in which Furman was driven from the house, and that her husband inflicted violence on her because he found her with Furman in the room in

which the latter slept.   But in what situation he found them
does not appear by any competent evidence.   That an
improper (and perhaps criminal) intimacy existed between
her and Furman at the time, is evidenced by the fact that he
wrote letters of a highly improper character to her in Janu-
ary, 1878, from Trenton, where he was employed, addressing
them to her by a false name, at her request.   Some of these
letters were intercepted.   They were called for and obtained
at the post-office in Atlantic City by the complainant.   It
does not appear that the defendant received any of those
which are produced.   She called at the post-office for letters
addressed to that name, however, and falsely stated that they
were intended for a servant in the hotel.   And she received
one or more letters so addressed.   Furman, who was sworn
for the complainant, refused to answer whether he had had
criminal intercourse with the defendant, basing his refusal
on the ground that his answer would criminate him, and
adding an expression of his determination not to furnish
evidence against her in that respect.   His replies, however,
had no reference to the transaction at the hotel.   He was
not inquired of as to that occasion.   I do not find in the case
the evidence on which I ought to base a decree of divorce.
The necessary amount of legal proof is not produced.   With
the husband's testimony, if that were competent, it would
be otherwise.   But it is not competent on the subject of the
adultery or to prove the letter which he swears is in the
handwriting of the defendant.   It is competent to prove
nothing but the marriage.   *Rev. p. 378* § *5; Marsh* v. *Marsh,*
*2 Stew. 296.*

The statements of the alleged paramour are not competent
evidence against the defendant.   They were not made in
her presence.   His letters to her, while under the circum-
stances they show a highly improper intimacy, do not prove
adultery.   No letter of hers to him is properly in evidence.
The letter before referred to, and which the complainant
swears is in her handwriting, is not proved by Furman or
any one else except the complainant.   Furman says he

"guesses" he did not receive it, but that it was intercepted before it reached him. He does not testify by whom it was written or from whom it came. Leaving the husband's testimony on the subject of the adultery, and as to all things else except the marriage, out of consideration, there is no legal evidence that the defendant was in Furman's room for any improper purpose, and there is no sufficient evidence against her.

The bill will be dismissed, with costs.